**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-424-WJM-CBS

PEERLESS INDEMNITY INSURANCE COMPANY,

      Plaintiff,

v.

SHANE COLCLASURE, individually and d/b/a Sunrise Buildings,
PATRICIA WEED,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

This is a diversity action whereby Plaintiff Peerless Indemnity Insurance

Company ("Peerless") seeks a declaration of its rights and obligations under the

commercial general liability policy (the "Policy") it issued to Shane Colclasure

("Defendant Colclasure").  Specifically, Peerless "requests a declaratory judgment from

this Court that [Peerless] has no obligation to indemnify Defendant Colclasure" for any

judgment obtained against him in an underlying action involving Patricia Weed

("Defendant Weed").  (ECF No. 1 ¶ 27.)  This matter is before the Court on Peerless's

Motion for Summary Judgement.  (the "Motion," ECF No. 38.)  For the reasons set forth

below, the Motion is granted in part and denied in part.

## I.  BACKGROUND

The following facts are undisputed, unless attributed to one party or another, or

otherwise noted.

Peerless issued the subject insurance Policy to Defendant Colclasure, with a coverage period effective December 5, 2011 to December 5, 2012.  (ECF No. 38 ¶ 1.) The Policy provides coverage, subject to certain exclusions, for those sums that Defendant Colclasure becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence."  (*Id*. ¶ 2; ECF No. 1-1 at 30.)

On July 12, 2011, the roofing systems on Defendant Weed's residence, barn, and indoor riding arena were damaged due to a localized hail storm.  (ECF No. 38-2 at 2.)  Defendant Weed's homeowner's insurance company authorized funds pursuant to its policy for the repair and replacement of each roof.  (*Id.*)  On October 7, 2011, Defendant Weed entered into a contract with Defendant Colclasure, to remove and replace the damaged roofing systems.  (ECF No. 83-3 at 1.)  The contract included a fee-shifting provision, stating "[i]n the event litigation or arbitration arises out of this contract, prevailing party(ies) are entitled to all legal, arbitration, and attorney fees."  (*Id.* at 2.)  Defendant Colclasure later subcontracted with D&G Construction, Inc. to replace the steel roofing on the riding arena.  (ECF No. 38 ¶ 11.)

Defendant Colclasure and/or his subcontractor failed to properly remove and replace the riding arena roof, which resulted in water leakage, panel alignment problems, and damage to the insulation between the roof decking and truss system. (*Id.* ¶ 13.)  Subsequently, on May 25, 2012, Defendants Colclasure and Weed entered into an amended contract, whereby Defendant Colclasure agreed "that upon receipt of the final payment he will remove the insulation and the metal roofing. Contractor [Colclasure] will replace with Homeowner approve[d insulation] and Burgundy metal roofing material [. . .]"  (ECF No. 36-6 at 1.)  Defendant Colclasure then attempted to

repair the roof.  (ECF No. 38 ¶ 15.)

On February 10, 2014, Defendant Weed brought suit against Defendant Colclasure and his subcontractors in Colorado state court, bringing five claims for relief: (1) breach of contract, (2) breach of warranty, (3) negligence resulting in property damages, (4) negligence *per se*, and (5) negligent repair resulting in property damage. (*Id.* ¶ 17; ECF No. 38-2 at 4–6.)  In the underlying complaint, Defendant Weed alleged that the roofing system "had been installed in a manner that exposed the insulation, truss system and [arena] floor to water infiltration." (*Id.* at 4.)   Peerless provided a defense to Defendant Colclasure, subject to a reservation of rights under the Policy. (ECF No. 38 ¶ 19.)

At trial, Weed testified regarding Defendant Colclasure and/or his subcontractor's defective workmanship.  (*Id.* ¶ 20.)  Trial evidence supported the cost to repair/replace the arena roof as an element of damages.  According to Defendants "some of the defects referenced illustrate resultant [or consequential] damage to the arena's original insulation, wood framing and flooring." (ECF No. 47 ¶ 20.)  As to the insulation, testimony was elicited establishing "water damage to the insulation" and subsequent deterioration.  (ECF No. 38-5 at 14.)  Both Defendant Colclasure and Defendant Weed testified at trial that Defendant Colclasure had agreed to replace the wet insulation in the amended contract.  (ECF No. 38 ¶ 22.)  When asked at trial whether the insulation was ever replaced by Defendant Colclasure, Defendant Weed answered "no, it was not." (ECF No. 38-8 at 9.)  As to the wood framing, Ms. Weed testified at trial that she "observe[d] major water damage coming through–water coming through and damaging the wood[.]" (ECF No. 38-5 at 15.)  And that the water "started coming down the wood

structure inside on the wood posts." (ECF No. 38-8 at 3.)  Further, the water "really soaked into the wood" which became "darkened from water damage." (*Id.* at 5–6.)  As to the arena flooring, Defendant Weed testified that water leaked "towards the side of the building . . . . [d]own onto the floor." (*Id.* at 5.)  The underlying complaint alleges that the riding arena has "a specialized floor suited to equestrian activity." (ECF No. 38-2 at 2.)  In fact, during trial, Defendant Weed's horse trainer testified that "water on the floor can be a problem with the horses." (ECF No. 38-5 at 13.)  Also, trial testimony regarding the cost to repair and replace the arena roofing system was elicited to support the element of damages. (ECF No. 38-4 at 14–15.)

On December 18, 2015, the jury found in favor of Defendant Weed on her breach of contract, breach of warranty, and negligence claims.  (ECF No. 38-9 at 2–3.)  On Defendant Weed's negligence claim, the jury allocated one hundred percent of the fault to Defendant Colclasure, and zero percent to his subcontractor.  (ECF No. 38 ¶ 32.)  The judgment entered on Defendant Weed's jury verdict was for $125,000 in economic damages, $25,000 in non-economic damages, $14,796.26 in costs, and $136,573.35 in reasonable attorneys' fees.  (ECF No. 38-10 at 2.)  To the Court's knowledge, the verdict did not detail what damages arose from each claim, nor did it itemize which elements of claimed damages underlie the jury's damages award.[1]

Based on this course of events, Peerless brought this action for declaratory judgment on February 22, 2016.  (ECF No. 1.)  On April 5, 2016, Defendants Weed and

---

[1] The Court recognizes that question ten of the verdict form reads "State below the amount of dollars that will compensate the Plaintiff for her economic damages in accordance with Instructions '20' and '21.'" (ECF No. 38-9 at 3.)  These subsequent questions may resolve the lacking itemization of damages, however, this is speculative.

Colclasure together filed an answer to the complaint and counterclaims against Peerless, including: (1) breach of insurance contract, (2) common law bad faith breach of insurance contract, (3) statutory bad faith under Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116, (4) professional negligence, (5) breach of fiduciary duty, (6) negligent misrepresentation, and (7) negligent failure to warn.  (ECF No. 19 at 11–18.)[2]

On July 25, 2016, Peerless filed its Motion for Summary Judgment.  (ECF No. 38).  On August 30, 2016, discovery was stayed pending resolution of the Motion.  (ECF No. 44.)  On September 9, 2016, Defendants filed their Response to the Motion.  (ECF No. 47).  Peerless filed its Reply on October 10, 2016.  (ECF No. 52).

## II.  LEGAL STANDARD

Summary Judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adamson v. Multi. Cmty. Diversified Servs., Inc.,* 514 F.3d 1136, 1145 (10th Cir. 2008).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

On a motion for summary judgment, the moving party bears the burden of

---

[2] Defendants Weed and Colclasure also together assert third party claims against third party defendants Debbie Klisch and Southern Colorado Insurance Center, LLC ("Third Party Defendants").  (ECF No. 19 at 18.)  The third party claims include: (1) professional negligence, breach of fiduciary duty, negligent misrepresentation, and negligent failure to warn.  (*Id.* at 18–21.)  The Court is aware that Third Party Defendants have filed a motion for summary judgment, however, that motion is not yet ripe for review.  (ECF Nos. 53, 60.)

demonstrating that no genuine issue of material fact exists. *Adamson*, 514 F.3d at 1145. Where the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by demonstrating a lack of evidence for an essential element of the nonmovant's claim. *Id.* In contrast, a movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). In deciding whether the moving party has carried its burden, the Court does not weigh the evidence, and instead views it, and draws all reasonable inferences from it, in the light most favorable to the nonmoving party. *Adamson*, 514 F.3d at 1145. Unsupported conclusory allegations, however, are not sufficient to create a genuine dispute of material fact on summary judgment. *See Mackenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). When a moving party has carried its burden under Rule 56(c), more than "some metaphysical doubt" as to the material facts must be demonstrated by the nonmovant to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III. ANALYSIS

Under Colorado law,[3] "the duty to indemnify relates to the insurer's duty to satisfy

---

[3] Federal courts sitting in diversity apply the forum state's choice-of law principles. *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009). Colorado choice-of-law rules provide that an insurance contract is governed "by the law of the state with the most significant relationship to the insurance contract." *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009). A significant part of the events or omissions giving rise to the claim for insurance coverage occurred in Colorado; a policy of commercial general liability insurance was negotiated, purchased, and delivered in Colorado; and the underlying state action giving rise to the claim for insurance coverage occurred in Colorado. (ECF No. 38 at 14.) Colorado therefore has the most significant relationship to the Policy, thus it must be interpreted within the framework of Colorado law. *See Berry & Murphy*, 586 F.3d at 808. Moreover, neither party objects to the application of Colorado law, or

a judgment entered against the insured" and "arises only when the policy actually

covers the alleged harm" that underlies the entered judgment.  *Cyprus Amax Minerals*

*Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).  Simply stated, "indemnity

flows from the nature of the ultimate verdict, judgment, or settlement."  *Id*. at 301.

Accordingly, the determination of whether an insurer owes a duty to indemnify "requires

factual development, as it is largely a question of fact."  *Id*. at 302.

Colorado courts construe insurance policies "using general principles

of contract interpretation."  *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661

F.3d 1272, 1283 (10th Cir. 2011).  Therefore, absent an ambiguity, a policy's language

is construed according to its plain meaning.  *Id*.  However, in recognition of the unique

relationship between insurer and insured, courts "construe ambiguous provisions

against the insurer and in favor of providing coverage to the insured."  *Id*.  Courts

should read policy provisions as a whole rather than in isolation, and may not "extend

coverage beyond that contracted for, nor delete [provisions] to limit coverage."  *Cyprus*

*Amax Minerals Co.*, 74 P.3d at 299.

Under a commercial general liability ("CGL") policy, such as the one at issue

here, the initial burden is upon the insured to show that the loss sustained comes within

the terms of the insurance policy; in other words, the insured has the burden to prove a

material issue of fact exists concerning their entitlement to recovery under the

insurance policy.  *See Rodriguez v. Safeco Ins. Co.*, 821 P.2d 849, 853 (Colo. App.

1991).  Then, once the insured claims a loss covered by the policy, the burden is on the

---

suggests that another state's law applies, to the interpretation of the Policy.

insurer to prove that the policy excludes the proximate cause of the loss.  *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006); *see also* 17A Steven Plitt *et al.*, *Couch on Insurance* § 254:52 (3d ed., Dec. 2016 update) (discussing burden of proof in the context of general liability insurance).  Any exclusion must be clear and specific to be enforceable.  *Leprino Foods*, 453 F.3d at 1287.  If the insurer shows that an exclusion applies, "[t]he burden then shifts back to the insured to prove the applicability of an exception to the exclusion."  *Id.* (citation omitted).

Peerless argues that the Policy does not provide indemnity with respect to the underlying judgment because there is no coverage for economic and non-economic damages, as well as attorneys' fees and costs.  (ECF No. 38 at 2–3.)  Peerless also contends that Defendant Colclasure's counterclaims fail as a matter of law and should therefore be dismissed.  (*Id.* at 3.)  Defendants, however, respond that there is indemnification under the Policy for the underlying judgment, and that the counterclaims survive Peerless's Motion.  (ECF No. 47 at 15, 30.)  The Court discusses each argument in turn, below.

**A.     Whether Policy Coverage Exists**

    1.     <u>Economic Damages</u>

The Court first considers the parties' arguments as to whether the underlying judgment reflects an award for "property damage" caused by an "occurrence."  The Policy applies "only if . . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'"  (ECF No. 1-1 at 30.)

    a.     *Occurrence*

"Occurrence" is defined under the Policy as "an accident, including continuous or

repeated exposure to substantially the same general harmful conditions." (*Id.* at 44.)

Peerless argues that faulty workmanship, or deficiencies in the insured's work, does not

constitute "property damage" caused by an "occurrence." (ECF No. 38 at 15 (citing

*McGowan v. State Farm Fire & Cas. Co.*, 100 P.3d 521, 525 (Colo. App. 2004)).)

Defendants point to Colorado Revised Statutes § 13-20-808, arguing that the

"statutorily required construction of 'occurrence' in this case is dispositive." (ECF No. 47

at 16.)

Signed into law on May 21, 2010, § 13-20-808, as applied to the Policy's

definition of "occurrence," creates a threshold presumption that construction work

resulting in damage is an "accident," and therefore an "occurrence" until an exclusion

eliminates coverage:

> In interpreting a liability insurance policy issued to a
> construction professional, a court shall presume that *the
> work of a construction professional that results in property
> damage, including damage to the work itself or other work, is
> an accident unless the property damage is intended and
> expected by the insured.* Nothing in this subsection:
>
> (a) Requires coverage for damage to an insured's own work
> unless otherwise provided in the insurance policy; or
>
> (b) Creates insurance coverage that is not included in the
> insurance policy.

C.R.S. § 13-20-808(3) (emphasis added).

The Court finds that this statute is applicable and settles this issue. Peerless

issued the Policy to Defendant Colclasure in 2011, subsequent to the statute's

passage. (*See* ECF No. 38 ¶ 1.) In its Reply, Peerless argues that the "Defendants

cannot rely on § 13-20-808 to rewrite the Policy and provide coverage for [Defendant

9

Colclasure's] defective work," noting that nothing in the subsection requires coverage for defective work, or creates insurance coverage that is not otherwise included.  (ECF No. 52 at 9.)  The Court notes that the statute is not a guarantee of coverage under the commercial liability policy, rather it operates to shift the burden of proof away from the insured specifically as to the meaning of "accident," which falls within the Policy's definition of "occurrence"; and to create a judicial presumption that an "accident" (and therefore an "occurrence") has been shown, unless or until a Policy exclusion eliminates coverage for that type of occurrence.  In other words, § 13-20-808 does not mandate that all construction defect claims are covered, as Peerless correctly notes, because it specifically preserves an insurer's right to exclude coverage.  *See* C.R.S. § 13-20-808(3)(a).

In *Colorado Pool Systems, Inc. v. Scottsdale Ins. Co.*, 317 P.3d 1262 (Colo. App. 2012), the Colorado Court of Appeals discussed the effect of the statute in dicta, noting that "[t]he statute's effect is clear enough.  If we were to apply it, we would presume that the CGL policy covered damage that resulted from [the general contractor's] defective workmanship." *Id*. at 1268.[4]  Likewise, it fairly appears that Defendant Colclasure and/or his subcontractor did not intend and expect the damage to Defendant Weed's property, thus applying the presumption required by § 13-20-808 to the Policy, the Court finds that Defendant Colclasure's work resulting in property damage was an "accident" and, therefore, is a covered "occurrence."

---

[4] In *Colorado Pool Systems*, the court considered a similar insurance policy executed prior to the statute's passage, but ultimately concluded that the statute was not controlling because its retroactive application would have been unconstitutional. *Id.* at 1269.

     b.    *Property Damage*

"Property damage" is defined under the Policy as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . . or [l]oss of use of tangible property that is not physically injured."  (ECF No. 1-1 at 45.)  Peerless argues, "[t]o the extent that the judgment provided damages to repair and replace a defective roof, there is no coverage under the Policy."  (ECF No. 52 at 13.)  The Court agrees with Peerless that the Policy does not provide coverage for the cost to repair or replace the arena roof because such damages do not constitute "property damage" under Colorado law.

In *Colorado Pool Systems*, a general contractor brought claims against its insurer after the insurer refused to indemnify the contractor for losses associated with demolishing and replacing an improperly constructed pool.  *See* Colorado Pool Sys., 317 P.3d at 1265.  The court there considered two types of property damage: "(1) the cost of demolishing and replacing the defective pool; and (2) consequential, or 'rip and tear,' damage to nondefective third-party work, which occurred during the replacement project." *Id*. at 1271.  The court concluded that the "policy does not cover damage incurred in demolishing and replacing the pool itself . . . . [but the] rip and tear damage to nondefective third-party work (including damage to the deck, sidewalk, retaining wall, and electrical conduits) is covered."  *Id*; *see also TCD, Inc. v. Am. Family Mut. Ins. Co.*, 296 P.3d 255 (Colo. App. 2012) (holding that the cost to repair and replace a roof that was installed in a manner that did not meet code was not "property damage"); *Cool Sunshine Heating & Air Conditioning, Inc. v. Am. Family Mut. Ins. Co.*, 2014 WL 7190233, at *3 (D. Colo. Dec. 17, 2014) ("The cost to repair a defectively installed

11

product does not constitute 'property damage' unless the defective product causes some damage to the property outside of the cost to replace the defective product."). Thus, "property damage" does not include costs of repair or replacement of defective workmanship, but does include consequential damage to other parts of the property.

Here, both parties appear to agree that the state court judgment reflected damages for the repair and/or replacement of the defective arena roof–which the Court finds are not property damage under authority cited above.  (*See* ECF No. 38 at 17.) However, whether the judgment also encompassed *consequential* damage—*e.g.*, the cost to repair or replace the insulation, wood trussing, and arena flooring—remains factually undetermined.

The special verdict form sheds no insight on what, specifically, the economic damages were awarded for.  (ECF No. 38-9 at 3.)  Moreover, this Court was only provided limited portions of the trial transcript, and is therefore unable to determine precisely what the jury relied upon in coming to its economic damages award.[5]  The Court's review of the transcript extracts reveals that testimony was elicited at trial as to damage extending beyond the roof, certainly including the insulation and possibly the

---

[5] Peerless argues that consequential damages "were not presented to the jury" and the Defendants' "belated" claim of consequential damages "is supported only through [their supplemental affidavits submitted with their summary judgment briefing], and not by reference to testimony or evidence the jury considered in reaching its verdict." (ECF No. 52 at 10.) Peerless also contends that "Defendants are bound by the testimony and matters actually decided or adjudicated in the underlying action, and cannot change or modify that testimony or those findings." (*Id.* at 11 (citing *Am. Fire & Cas. Co. v. BCORP Canterbury at Riverwalk, LLC*, 282 Fed. App'x 643, 647 (10th Cir. 2008) (noting that "to be relevant to the indemnity question, the extrinsic evidence may only clarify or explain the evidence presented to the state court jury")).) At this time the Court cannot determine whether the supplemental affidavits attached to Defendants Response "clarify" or "explain" evidence presented at trial, because the Court has not been provided transcripts from the full trial.  For this reason, the Court declines to consider the  supplemental affidavits in ruling on Peerless's Motion.

wood trussing and arena flooring.  (ECF No. 38-5 at 14–15; ECF No. 38-8 at 3–6.)

With this in mind, the Court finds that the Policy does provide coverage for consequential "property damage" caused by an "occurrence," absent a showing that any exclusions apply.  As noted earlier, the moving party who does not bear the ultimate burden of persuasion at trial may satisfy its burden by demonstrating a lack of evidence.  *See Adamson*, 514 F.3d at 1145.  Peerless has not demonstrated a lack of evidence as to consequential damages, therefore the Court finds that there are genuine disputes of material fact which preclude a grant of summary judgment on this issue. Moving forward, in order to defeat the duty to indemnify, Peerless must show that damage underlying the state court judgment falls "solely and entirely within the exclusions in the insurance policy."  *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 829 (Colo. 2004) (citation omitted).

c.    *Exclusions*

Peerless argues that the Policy contains three standard industry exclusions that preclude coverage for the damage alleged by Defendant Weed in the underlying action. (ECF No. 38 at 18.)  Each exclusion will be discussed in turn.

(1)  Your Product

The "damage to your product" exclusion states: "[t]his insurance does not apply to . . . . '[p]roperty damage to 'your product' arising out of it or any part of it."  (ECF No. 1-1 at 34.)  "Your product" is defined under the policy as "goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by" the insured or others trading under the insured's name.  (*Id.* at 45–46.)

Peerless maintains that courts have found that "the 'your product' exclusion defeats coverage where the underlying allegations all arose from the insured's allegedly defective products." (ECF No. 38 at 19.)  Defendants respond by arguing that Defendant "Weed does not allege that the products used by [Defendant Colclasure] and his subcontractors were defective . . . . and [Defendant Colclasure] provided a 5 yr. installation warranty, not a product warranty." (ECF No. 47 at 23.)  Peerless contends that courts have routinely held that this exclusion also "precludes coverage for defective or inferior *work*, and corresponding warranties provided by an insured." (ECF No. 52 at 16 (citing *Cool Sunshine Heating & Air Conditioning, Inc.*, 2014 WL 7190233, at *3) (emphasis added).)

The Court disagrees with Peerless.  First, courts have not routinely held that the "your product" exclusion applies to defective work when the defective work constitutes a service, not a product.  Such a view would render the separate "your work" exclusion redundant and superfluous.  Moreover, a closer reading of the authority cited by Peerless reveals that the court there only analyzed the "your work" and "impaired property" provisions, not the "your product" exclusion.  *See Cool Sunshine Heating & Air Conditioning, Inc.*, 2014 WL 7190233, at *3.  Accordingly, the Court construes the defective workmanship in this action to constitute a service, not a product, and therefore the "your product" exclusion does not apply.

(2)  Your Work

The "damage to your work" exclusion provides: "[t]his insurance does not apply to . . . . '[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'  This exclusion does not apply if the

damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."  (ECF No. 1-1 at 34.)  "Your work" is defined under the policy as "[w]ork or operations performed by you or on your behalf."  (*Id.* at 46.)

Peerless argues that "this policy provision 'excludes coverage for damage to the insured's work, which includes work or operations performed by the insured or warranties or representations about the qualify of the work.'" (ECF No. 38 at 19 (citing *Crossen v. Am. Fam. Mut. Ins. Co.*, 2010 WL 2682103, at *7 (D. Colo. July 7, 2010)).) Peerless asserts that the trial testimony is replete with references to property damage to the arena roof and insulation, to which the "your work" exclusion applies.  (ECF No. 38 at 19.)  The Court agrees with Peerless that the exclusion applies to the damage to Defendant Colclasure's work on the roof.  However, this does not extend to the consequential damage, including the arena flooring, wood trussing, and insulation, which were not directly worked on by Defendant Colclasure.  Peerless argues that Defendant Colclasure contracted to replace the insulation in the amended contract; however, the evidence at trial demonstrated that he did not actually replace or otherwise work on it.  (ECF No. 38 at 19; ECF No. 38-8 at 9.)  Accordingly, the Court finds that the "your work" clause excludes coverage to the extent the judgment includes damage to the roof or to insulation that Defendant Colclasure actually worked on.  But it does not exclude the consequential damages to portions of Defendant Weed's property that Defendant Colclasure did not work on.[6]

---

[6] Alternatively, Defendants contend that the exception to the "your work" exclusion applies, noting that this "exception should apply, because neither [Defendant Colclasure] nor anyone under the name of Sunrise Buildings, did any work on the roof . . . . it was all done by his subcontractors."  (ECF No. 47 at 24.)  Defendants, however, acknowledge that "a separate

(3)  Impaired Property

The impaired property exclusion states: "'[p]roperty damage' to 'impaired property' or property that has not been physically injured, arising out of: (1) [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or (2) [a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."  (ECF No. 1-1 at 34.)  "Impaired property" is defined under the policy as "tangible property, other than 'your product' or 'your work', that cannot be used or is less useful because: (a) [i]t incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or (b) [y]ou have failed to fulfill the terms of a contract or agreement."  (*Id.* at 43.)

"The purpose of this exclusion is in essence to preclude coverage for loss of use claims arising from faulty work or products when there is no physical injury to the property.  Thus, this exclusion prevents an insured from claiming coverage for pure economic loss."  9A Steven Plitt *et al.*, *Couch on Insurance* § 129:23 (3d ed., Dec. 2016 update).

The parties disagree as to whether "loss of use" damages were sought and ultimately obtained in this matter.  (ECF No. 52 at 19; ECF No. 47 at 27.)  Peerless points to Defendant Weed's underlying complaint which requests a judgment "[f]or loss of use of the riding arena."  (ECF No. 52 at 19; ECF No. 38-2 at 7.)  However, neither

---

rider which purports to delete the subcontractor exception to the 'your work' exclusion" is contained in the Policy.  (ECF No. 47 at 25; see also ECF No. 1-1 at 52.)  Defendants label "this [as] confusing" and argue that the rider should not apply to the exception under the reasonable expectations doctrine.  (ECF No. 47 at 25–26.)  However, the language in the Policy, specifically the rider, is unequivocal, therefore the Court declines to apply the reasonable expectations doctrine and finds that the rider effectively removed the subcontractor exception from the Policy.

party has pointed the Court to trial testimony establishing whether actual "loss of use" of the riding arena was part of the jury's damages award. (*See generally* ECF Nos. 38, 47, 52.)  Moreover, given that the Court was only presented with portions of the trial testimony, it cannot determine at this time whether the underlying judgment reflected damages for "loss of use."  However, the Court notes that it does agree with Peerless's statement of the law, and finds that to the extent that the judgment reflects damages for "loss of use," no coverage and indemnity would exist for such damages, due to the impaired property exclusion.

(4)  Fungi/Bacteria

Peerless argues that "no indemnity exists for any portion of the judgment that addresses damages for dry rot or fungi, due to the Policy's 'Fungi and Bacteria' exclusion."  (ECF No. 38 at 23.)  Defendants concede that the exclusion precludes indemnity.  (ECF No. 47 at 27.)  However, Defendants note that "there is no evidence fungi or mold caused any damage," and in fact the underlying judgment "obtained does not include or mention damages arising out of mold damage or exposure."  (ECF No. 47 at 27–28.)  Accordingly, the Court finds that this exclusion precludes indemnity for damage caused by fungi/bacteria, but, as noted repeatedly above, the Court is unaware if the judgment actually reflects such damage.

As the moving party who bears the burden at trial to prove that an exclusion precludes coverage, Peerless must submit evidence establishing that an exclusion applies and addresses the economic damages award reflected in the underlying judgment.  *See In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. at 1111.  Again, it is unclear to the Court what the economic damages encompass, therefore, the Court

17

finds a genuine issue of material fact that defeats summary judgment.  Consequently,

the Court cannot determine at this time whether an exclusion applies and precludes

coverage, hence no determination as to duty to indemnify for economic damages will

be made.  Peerless's Motion is denied as to this issue.

        2.    <u>Non-Economic Damages</u>

The jury in the underlying action awarded Defendant Weed $25,000 in non-

economic damages.  (ECF No. 38 ¶ 32; ECF No. 47 ¶ 32.)  Peerless argues that there

is no coverage for these non-economic damages "because they do not constitute

'bodily injury' as defined by the Policy."  (ECF No. 38 at 21.)

The insuring clause states that Peerless "will pay those sums that the insured

becomes legally obligated to pay as damages because of 'bodily injury'. . . . to which

this insurance applies."  (ECF No. 1-1 at 30.)  "Bodily injury" is defined in the Policy as

"bodily injury, sickness or disease sustained by a person, including death resulting from

any of these at any time."  (*Id.* at 42.)

In *National Casualty Co. v. Great Southwest Fire Insurance Co.*, 833 P.2d 741,

746 (Colo. 1992), the Colorado Supreme Court concluded that the term "bodily injury,"

which was defined in the subject insurance policy as "bodily injury, sickness, or

disease," covers only physical injury and does not include claims for purely nonphysical

or emotional harm.  The Colorado Supreme Court further held that without allegations

or a showing of physical injury, physical contact, or pain in the underlying claim of

emotional distress did not fall within the general liability policy's coverage for bodily

injury.  *Id.*

Here, Peerless asserts that it "is undisputed that there was no physical or bodily injury to [Defendant Weed] that resulted from the poor workmanship." (ECF No. 38 at 21.)  In their response, Defendants do not claim that Defendant Weed actually sustained physical bodily injury or that her emotional distress was accompanied by a physical manifestation of that emotional distress.  (*See* ECF No. 47 at 28.)[7]  Because Peerless does not bear the burden of proof at trial as to whether non-economic damages constitute a loss covered under the Policy, Peerless may satisfy its burden as the moving party by demonstrating a lack of evidence.  *Adamson*, 514 F.3d at 1145. Absent a showing by Defendants that testimony was presented at trial regarding physical injury, physical contact, or pain sustained by Defendant Weed, the Court finds that Peerless has demonstrated a lack of evidence showing that the non-economic damages awarded in the underlying judgment fall within the policy's definition of "bodily injury."  Accordingly, there is no genuine dispute of material fact as to a failure to show "bodily injury" as defined under the Policy.

In sum, the Court finds that Peerless has no duty to indemnify Defendant Colclasure for non-economic damages because there is no coverage for such damages under the Policy.  Peerless's Motion is granted as to this issue.

### 3.     Attorneys' Fees and Costs

The judgment in the underlying action included attorneys' fees, and costs,

---

[7] Rather, Defendants argue, unpersuasively, that the underlying award of non-economic damages should be construed by the Court as "inconvenience" damages, which are expressly permitted under the Construction Defect Action Reform Act ("CDARA").  (ECF No. 47 at 28 (citing *Hildebrand v. New Vista Homes II, LLC*, 252 P.3d 1159, 1172 (Colo. App. 2010)).)  The Court finds *Hildebrand's* holding inapplicable because the underlying case in the instant action was not premised on the CDARA.

amounting to $136,573.35 and $14,796.26, respectively.  (ECF No. 38; ECF No. 47 ¶ 33.)  Defendant Weed was awarded attorneys' fees because of the prevailing party fee-shifting provision included in the contract between Defendant Weed and Defendant Colclasure.  (ECF Nos. 38, 47 ¶ 33.)  Peerless argues that the award of attorneys' fees and costs are not covered under the Policy for two reasons.  (*See* ECF No. 38 at 22.)  First, the insuring clause in the Policy only covers "those sums that the insured becomes legally obligated to pay as damages" and Peerless argues attorney fee awards are not encompassed under such damages.  (*Id.*)  Second, under the contractual liability exclusion in the Policy, "damage for which the insured is obligated to pay by reason of the assumption of liability in a contract or agreement" is excluded from coverage.  (*Id.*)

Defendants respond that in addition to the insuring clause, "Peerless may be obligated to indemnify [Defendant Colclasure] for the attorney fee and costs awards that entered against him under the Supplemental Coverages section of the Policy." (ECF No. 47 at 29.)  The Court finds Defendant Colclasure's argument under the "Supplementary Payments" section persuasive.

The "Supplementary Payments" section provides that Peerless "will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend: (e) All costs taxed against the insured in the 'suit.'" (ECF No. 1-1 at 37.)  "Suit" is defined in the policy as "a civil proceeding in which damages because of 'bodily injury' [and] 'property damage' . . . . to which this insurance applies are alleged."  (*Id.* at 45.)

Interpreting an identical "Supplementary Payments" clause, the court in *Hoang v. Monterra Homes (Powderhorn) LLC*, 129 P.3d 1028, 1038 (Colo. App. 2007), rev'd on

other grounds sub nom *Hoang v. Assurance Co. of Am.*, 149 P.3d 798 (Colo. 2009),

gave the term "costs" its plain meaning, and concluded "that it encompasses attorney

fees that were awarded as costs." *Id*. at 1038.  The court went on to state, "[w]here

attorney fees are authorized by statute, court rule, contract, or common law, they may

be treated as either costs or damages.  Classification of attorney fees as costs or

damages is a fact-sensitive inquiry and generally rests in the sound discretion of the

trial court." *Id*. at 1038–39.  The Colorado Supreme Court has noted that "[s]uch

discretion should be guided by the nature of the requested attorney fees.  If attorney

fees are part of the substance of a lawsuit, that is, if the fees being sought are the

legitimate consequences of the tort or breach of contract sued upon, [] then such fees

are clearly damages.  If, on the other hand, attorney fees are simply the consequence

of a contractual agreement to shift fees to a prevailing party, then they should be

treated as 'costs,' at least where the fee-shifting contract provision is not the subject of

the dispute between the parties and the contract itself is proven to exist." *Ferrell v.

Glenwood Brokers, Ltd.*, 848 P.2d 936, 941–42 (Colo. 1993).

Here, in the state trial court order granting Defendant Weed's motion for entry of

judgment, Judge Gilbert noted that "the attorney fees awarded as part of this Judgment

shall be taxed as costs."  (ECF No. 38-10 at 2.)  Clearly Judge Gilbert characterized the

attorneys' fees awarded as "costs."  The Court agrees with this characterization, given

the Colorado Supreme Court's guidance that fees awarded on the basis of a fee-

shifting provision should fall under the "costs" category.  *See Ferrell*, 848 P.2d at 941;

*see also Double Oak Construction, LLC v. Cornerstone Development International,

LLC*, 97 P.3d 140, 150 (Colo. App. 2003).  Therefore, this Court will not disturb the trial

21

court's characterization.  *See Hoang*, 129 P.3d at 1038 (classification of fee award rests in discretion of trial court).

In sum, Peerless does have a duty to indemnify Defendant Colclasure as to attorneys' fees and costs because they are provided coverage under the Policy's "Supplementary Payments" section.  Peerless's Motion is therefore denied as to this issue.  The Court recognizes that Defendants did not file a motion requesting affirmative summary judgment on this issue.  However, given the Court's resolution of the arguments briefed on Peerless's motion, it is doubtful that any factual disputes remain for trial as to Defendant Colclasure's entitlement to indemnification for the award of attorneys' fees and costs.

**B.    Defendants' Counterclaims**

Defendants bring counterclaims against Peerless for: breach of insurance contract, bad faith breach of insurance contract (both common law and statutory under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116), professional negligence, negligent misrepresentation, negligent failure to warn, and breach of fiduciary duty.  (ECF No. 19 at 11–18.)  Peerless contends that Defendant Colclasure's counterclaims fail as a matter of law.  (ECF No. 38 at 3.) The counterclaims will be discussed in turn.

1.    <u>Breach of Insurance Contract & Bad Faith Claims</u>

Peerless argues that it "could not have breached the Policy by declining to indemnify Colclasure for the judgment when no such coverage is provided under Policy."  (ECF No. 38 at 24.)  Further, when an insurer owes no duty to indemnify its insured, it cannot be in "bad faith" for failing to comply with a nonexistent duty under common law principles.  (*Id.* (citing *Jarnagin v. Banker's Life and Cas. Co.*, 824 P.2d

22

11, 15 (Colo. App. 1991)).)  Because the Court has concluded that Peerless has a duty to indemnify, at least as to attorneys' fees and costs, it follows that the  counterclaims for breach of insurance contract and common law bad faith do not fail on this basis.

Peerless also argues that the counterclaim for statutory bad faith pursuant to Colorado Revised Statutes  §§ 10-3-1115 and 10-3-1116 fails because neither Defendant Colclasure nor Defendant Weed "are a 'first-party claimant' with standing to assert such a claim."  (ECF No. 38 at 25.)

First-party claimants "whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit."  C.R.S. § 10-3-1116.  Additionally, the statute provides:

> (I) "First-party claimant" means an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy. "First-party claimant" includes a public entity that has paid a claim for benefits due to an insurer's unreasonable delay or denial of the claim.
>
> (II) "First-party claimant" does not include:
>
> > (A) A nonparticipating provider performing services; or
> >
> > (B) A person asserting a claim against an insured under a liability policy.

§ 10-3-1115(1)(b).

Peerless argues that Defendant Colclasure is not a "first-party claimant" as defined by the statute because he "does not seek a benefit payable to him under the Policy, but rather demands payment be made to Defendant Weed in satisfaction of the judgment."  (ECF No. 38 at 25.)  Additionally, it is argued that Defendant Weed is

specifically excluded under § 10-3-1115(1)(b)(II)(B) because she is an individual asserting a claim against an insured under a liability policy. (*Id.*)

The Court agrees with Peerless that Defendant Weed is not a "first-party claimant" under § 10-3-1115, by way of express exclusion under the statute. However, the Court disagrees with Peerless's argument as to Defendant Colclasure. As explained below, the Court finds that an insured under a CGL policy, such as Defendant Colclasure, is a "first-party claimant" for purposes of § 10-3-1116.

At common law, a first-party bad faith claim arises "when an insurance company delays or refuses to make payments 'owed directly to its insured under a first-party policy such as life, health, disability, property, fire, or no-fault auto insurance.'" *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 119 (Colo. 2010) (quoting *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004)). On the other hand, a third-party common law bad faith claim arises "when an insurance company acts unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a liability policy." *Goodson*, 89 P.3d at 414. However, in enacting §§ 10-3-1115 and 10-3-1116, the Colorado General Assembly "intended to create an express private right of action . . . . in addition to and different from common law bad faith claims." *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 972 (Colo. App. 2011). Thus, the statutes "cannot be read as simply restating the common law standard" for bad faith claims. *Id.* at 973.

In the Court's view, the statute explicitly defines who qualifies as a "first-party claimant," and in doing so it does not explicitly endorse a life, health, or disability insured's ability to bring a statutory claim any more than it precludes a commercial

24

general liability insured from bringing a statutory claim.  Moreover, the majority of decisions in this district have concluded that the plain language of § 10-3-1115 does not preclude commercial general liability insureds from bringing a statutory bad faith claim. *See Nat. Union Fire Ins. Co. of Pittsburgh, PA v. Intrawest ULC*, 2015 WL 1326199, at *4 (D. Colo. March 20, 2015); *Oakland Constr. Co., Inc. v. Phoenix Ins. Co.*, 2013 WL 2285778, at *5 (D. Colo. May 23, 2013) (ruling that an insured seeking indemnity from an insurer under a CGL policy is a first-party claimant under the statute); *D.R. Horton, Inc.–Denver v. Mountain States Mut. Cas. Co.*, 2013 WL 674032, at *2 (D. Colo. Feb. 25, 2013).  Accordingly, the Court finds that Defendant Colclasure has standing to assert a claim for statutory bad faith against Peerless under Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116.

    2.   <u>Negligence Claims</u>

    a.   *Professional Negligence*

Peerless asserts that if Defendant Colclasure has "any viable tort claims against Peerless, this claim is properly stated as a bad faith claim."  (ECF No. 38 at 26.)  To support this assertion Peerless contends that "any tort liability arising out of the insurance contract is properly stated as a claim for alleged breach of the duty of good faith and fair dealing, and an insured should not be permitted to state a claim for both bad faith and negligence."  (*Id.* (citing *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984)).)  Defendants provide no response.  The Court agrees with Peerless, the "pleading of two separate and distinct claims of bad faith and negligence is inappropriate" under the circumstances, therefore, the professional negligence claim shall be dismissed.  *Farmers Group, Inc.*, 691 P.2d at 1142–43.

b.  *Negligent Misrepresentation*

Under Colorado law, "a claim of negligent misrepresentation based on principles of tort law, independent of any principle of contract law, may be available to a party to a contract." *Keller v. A.O. Harvestore Prods.*, 819 P.2d 69, 72 (Colo. 1991).  To establish a claim for negligent misrepresentation, "it must be shown that the defendant supplied false information to others in a business transaction, and failed to exercise reasonable care or competence in obtaining or communicating information on which other parties justifiably relied." *Mehaffy, Rider, Windholz & Wilson v. Centra Bank Denver, N.A.*, 892 P.2d 230, 236 (Colo. 1995).

Peerless argues that it had zero communication with Defendant Colclasure prior to the underlying lawsuit, and that there is no evidence that Peerless made any representations in order to induce Defendant Colclasure to purchase the Policy.  (ECF No. 38 at 27.)   Defendants do not respond to this argument.  Moreover, Defendants fail to provide any evidence showing that Peerless supplied "false information" to Defendant Colclasure at the time that he entered into a business transaction with a representative of the insurance agency.  Accordingly, Defendants' claim for negligent misrepresentation fails as a matter of law.

c.  *Negligent Failure to Warn*

The elements of a claim for negligent failure to warn include: (1) the existence of a duty on the part of the manufacturer to warn buyers of any dangers that were known or should have been known, (2) breach of that duty by the manufacturer, and (3) injury to buyer resulting from that breach.  *See Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 198 (Colo. 1984).

Defendants' counterclaim states that Peerless failed to advise Defendant Colclasure "of the risks of the type of insurance product that they were placing or did not fully understand the nature and extent of the insurance product that they were placing." (ECF No. 19 at 17.) Peerless argues that "negligent failure to warn arises in the context of product liability lawsuits, where plaintiffs attempt to impose liability on a manufacturer for failure to warn of risks associated with allegedly defective products." (ECF No. 38 at 29.) Defendants provide no counter-argument. On this issue, the Court agrees with Peerless, that failure to warn claims typically arise in product liability suits and has no application to the instant action. Given Defendants' concession of this argument, the Court concludes that Peerless owed no duty to warn to Defendant Colclasure. Moreover, the Court finds that, even if a duty were owed, Defendants have failed to show how Peerless "manufactured" a "product" that could give rise to a failure to warn claim under the circumstances of this case or any injury flowing from the alleged failure to warn. Accordingly, Defendants' negligent failure to warn claim also fails as a matter of law.

3. Breach of Fiduciary Duty

Lastly, Peerless moves to dismiss Defendant Colclasure's claim for breach of fiduciary duty on the grounds that under Colorado law, no fiduciary relationship exists between an insured and insurer. (Id. at 29–30.) Peerless cites ample persuasive Colorado law on the issue. (Id. at 29 (citing Bernhard v. Farmers Ins. Exch., 915 P.2d 1285, 1289 (Colo. 1996) (finding that the insurer/insured relationship falls short of a true fiduciary relationship, even in the context of defending a third-party lawsuit); see also Bailey v. Allstate Ins. Co., 844 P.2d 1336, 1339 (Colo. App. 1992) ("[T]he relationship of

27

confidence and trust which exists between the insurer and insured is not a fiduciary one.")).) Defendant Colclasure has not provided a response to this argument. (*See generally* ECF No. 47.)

The Court agrees with Peerless that the parties are not in a fiduciary relationship, nor does the Court see any reason to impose a fiduciary duty upon Peerless under the circumstances. Accordingly, the breach of fiduciary duty claim fails as a matter of law. *See Lowry Assumption, LLC v. American Int'l Specialty Lines Ins. Co.*, 2011 WL 1321952, at *5 (D. Colo. Apr. 5, 2011) (dismissing breach of fiduciary duty claim against insurer due to lack of fiduciary relationship between the insured and insurer).

In conclusion, the Court dismisses Defendants' fourth, fifth, sixth, and seventh counterclaims against Peerless. (See ECF No. 19 at 15–18.) In so ruling, the Court is satisfied that Defendants' concerns are adequately addressed by their three surviving counterclaims: (1) breach of insurance contract, (2) bad faith breach of insurance contract under common law, and (3) statutory bad faith under Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.   Plaintiff's Motion for Summary Judgment (ECF No. 38) is GRANTED IN PART and DENIED IN PART as follows:

   a.   Summary Judgement is GRANTED in favor of Peerless and against Defendants as to Peerless's duty to indemnify for non-economic damages;

b.      Summary Judgment is DENIED as to Peerless's duty to indemnify for economic damages, attorneys' fees, and costs;

c.      Summary Judgment is GRANTED in favor of Peerless and against Defendants as to Defendants' counterclaims against Peerless for professional negligence, negligent misrepresentation, negligent failure to warn, and breach of fiduciary duty, and those claims are dismissed with prejudice; and

d.      Summary Judgment is DENIED as to Defendants' counterclaims against Peerless for breach of insurance contract, common law bad faith breach of insurance contract, and statutory bad faith under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.

2.      It is FURTHER ORDERED that the stay on discovery pursuant to ECF No. 44 and ECF No. 59 is hereby LIFTED; and

3.      Pursuant to Magistrate Judge Craig B. Shaffer's Prior Order (ECF No. 44), the parties are to contact his chambers within 72 hours of the entry of this Order.

Dated this 16th day of February, 2017.

BY THE COURT:

William J. Martínez
United States District Judge